# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

GLORIA M. LOPEZ and
DON D. MOYA, II, on behalf of
themselves and all others similar situated,

        Plaintiffs,                                           CIV No. 01-1312 MV/DJS

vs.

CITY OF SANTA FE,

        Defendant.

## MEMORANDUM OPINION

**THIS MATTER** came before the Court on the Parties' Joint Motion for Class Certification **[Doc. No. 18]** and Joint Motion for Order to Approve Stipulated Settlement **[Doc. No. 30]**, and Defendant's Unopposed Motion for Order Finalizing the Redistricting Plan and for Conduction of Municipal Elections **[Doc. No. 16]**. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, found the motions well taken and orally **GRANTED** the motions on February 19, 2002. The Court now sets forth in this memorandum opinion the bases for its earlier rulings.

## BACKGROUND

Plaintiffs' alleged in their First Amended Complaint **[Doc. No. 8]** that the population disparities among the electoral districts in the City of Santa Fe violated the constitutional mandate of one person one vote. Plaintiff Gloria Lopez, prior to the addition of Plaintiff Don Moya, II, in

the First Amended Complaint, also filed a Motion for Preliminary Injunction **[Doc. No. 5]** in order to prevent the City from proceeding with its March elections under the alleged unconstitutional electoral districts. A hearing on this motion was scheduled for January 22–23, 2002, but was subsequently vacated at the request of the Parties due to settlement negotiations between the Parties.

After reaching a settlement agreement, the Parties filed a Joint Motion for Class Certification **[Doc. No. 18]**, and Defendant filed an Unopposed Motion for Order Finalizing the Redistricting Plan and for Conduction of Municipal Elections **[Doc. No. 16]**, both of which the Court took under advisement until the fairness hearing. The Parties also filed a Joint Motion for Order for Approval of Conditional Stipulated Settlement Order **[Doc. No. 20]**, which the Court denied on February 5, 2002 **[Doc. No. 24]**, because the Parties' had not submitted a settlement agreement and had requested the Court to make factual findings without sufficient evidentiary support. The Parties subsequently filed a Joint Motion for Order to Approve Stipulated Settlement on February 15, 2002 **[Doc. No. 30]**.

Pursuant to the Court's instructions, the Parties gave Notice to the potential class of the motion for class certification, the proposed settlement agreement, and the fairness hearing. The Notice also advised potential class members of their right to object to either the class certification or the settlement agreement by submitting a written objection to the Court and/or presenting the objection at the fairness hearing. The details of the Notice to the class are set forth in the Court's Order Approving the Noticing Plan **[Doc. No. 23]**.

The Court received written objections to either the class certification or the proposed settlement agreement from Thomas Day, Tracey Kimball, and Donado Cove Coviello. At the

fairness hearing, which took place on February 19, 2002, the Court heard further objections from Frank Montaño, Miguel Chavez, Charlie Griego, and Sagamaya Dandi. Mr. Coviello also presented his objections at the fairness hearing. In addition, the Court heard testimony from several witnesses in support of class certification and the settlement agreement, as well as oral arguments by both counsel for Plaintiffs and Defendant.

Having already thoroughly reviewed the Parties' briefs and the relevant case law on the issues before the Court, and upon consideration of the various testimony and objections presented at the fairness hearing, the Court granted the Unopposed Motion for Order Finalizing the Redistricting Plan **[Doc. No. 16]**, the Joint Motion for Class Certification **[Doc. No. 18]**, and the Joint Motion for Order to Approve Stipulated Settlement **[Doc. No. 30]** at the end of the hearing in order to give the City and its registered voters some certainty regarding the March elections.

## STANDARDS

### I. Class Certification

A class must have the following prerequisites in order to be certified: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, because Plaintiffs seek injunctive relief, they must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." Fed. R. Civ. P.

23(b)(2). The party seeking class certification bears the burden of proving that the requirements of Rule 23 are satisfied. See Rex v. Owens ex rel. State of Oklahoma, 585 F.2d 432, 436 (10th Cir. 1978).

**II.     Settlement Agreement**

Rule 23(e) of the Federal Rules of Civil Procedure states that a "class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." While the Rule is silent as to what standard the Court should use to review the settlement, the Tenth Circuit has held that the settlement must be "fair, reasonable and adequate." Jones v. Nuclear Pharmacy, 741 F.2d 322, 324 (10th Cir. 1984); see also Gottlieb v. Wiles, 11 F.3d 1004 (10th Cir. 1993). In making this determination, the trial court must consider the following:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

Id.

# DISCUSSION

## I. Class Certification

Upon review of the Parties' Joint Motion for Class Certification **[Doc. No. 18]** and the supporting Memorandum of Law **[Doc. No. 19]**, as well as the various testimony presented at the fairness hearing, the Court finds that Plaintiffs have satisfied the requirements of numerosity, commonality, typicality, and adequacy of representation pursuant to Rule 23(a). Moreover, Defendant's failure to reapportion the electoral districts prior to the settlement of this civil matter satisfies Rule 23(b)(2).

### A. Numerosity

The key factor in determining the impracticability of joinder is the size of the class. See Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 324 (S.D. Fla. 1996). A plaintiff is not required to prove the identity of each class member or specify the exact number of class members. See Commander Properties Corp. v. Beech Aircraft Corp., 164 F.R.D. 529, 535 (D. Kan. 1995). Moreover, at least one court has held that joinder is shown where the class to be represented consisted of at least 50 members. See Olenhouse v. Commodity Credit Corp., 136 F.R.D. 672, 679 (D. Kan. 1991).

In this case, approximately 43,718 registered voters in the City of Santa Fe are eligible to be class members, thus making joinder entirely impracticable. Given such circumstances, the numerosity prong of Rule 23(a) has clearly been met.

### B. Commonality

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). "For a common

question of law to exist, the putative class must share a discrete legal question of some kind." J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1289 (10th Cir. 1999). Commonality requires only a single issue common to the class, see In re American Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir. 1996), and the fact that "the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy," Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988).

The questions of law and fact at issue in this case concern the constitutionality of the electoral districts prior to the redistricting efforts by the City Council—an issue that is clearly common to all residents who are registered to vote in the municipal elections. The factual question of whether population disparity existed among the districts, and the legal question of whether such disparity violated the U.S. Constitution, directly affected the impact of each class member's vote. Thus, Rule 23(a)'s requirement of commonality has been satisfied.

C. Typicality

"A representative plaintiff's claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory.'" In re Domestic Air Transp. Antitrust Litig., 137 F.R.D. 677, 698 (N.D. Ga.1991) (quoting 3 Newburg on Class Actions § 18.09, at 464). "In determining whether the typicality and commonality requirements have been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient. Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist. . . . [E]very member of the class need not be in a situation identical to that of the named plaintiff." Milonas v. Williams, 691 F.2d 931, 938 (10th Cir. 1982) (citations omitted).

Plaintiffs' representatives Gloria M. Lopez and Don Moya, II, are both registered voters who currently reside in Santa Fe. As such, they were subject to possible vote dilution resulting from the alleged malapportionment of the electoral districts, just as the class as a whole. Consequently, their claims and defenses are typical of the claims and defenses of the class, thus satisfying this prong of Rule 23(a).

D. Adequacy of Representation

The purpose of the "adequacy of representation" requirement is to "protect the legal rights of absent class members." Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 721 (11th Cir. 1987). In order to adequately represent the class, two requirements must be met: (1) the class representative must not have interests antagonistic to those of the class, and (2) the attorney representing the class must be qualified, experienced, and generally able to conduct the proposed litigation. See Retired Chicago Police Assn. v. City of Chicago, 7 F.3d 584, 598 (7th Cir. 1993). The party seeking certification has the burden to show adequacy of representation. See Kelly v. Mid-America Racing Stables, Inc. 139 F.R.D. 405, 410 (W.D. Okla. 1990).

From the record before the Court, including the testimony presented at the fairness hearing, the class representatives do not appear to have any interests antagonistic to those of the class. Moreover, Plaintiffs' attorneys, William L. Garrett, Manuel J. Lopez, and Rolando R. Rios, have demonstrated that they are qualified and experienced in election-related litigation. Mr. Garrett has been involved in voting rights litigation since 1971 and was formerly Chief of Litigation in the Texas Legal Services program. Mr. Rios was the former legal director of the Voting Rights Litigation Project for the Southwest Voter Registration Education Project from 1979 to 1984 and has served as either lead or co-counsel in several class actions on behalf of

minorities.  Finally, Mr. Lopez has participated in many voting rights cases in the past twenty years as a lawyer in private practice.  As a result, Plaintiffs have satisfied their burden of establishing the adequacy of their representation of the class.

**II.     Class Action Settlement Agreement**

Unlike settlement agreements in other civil matters, the Court must give its approval to any settlement that resolves a class action dispute.  "The reason the court is called on to review a settlement is to protect the rights of the many absent class members who were not involved in the negotiations leading to settlement." In re Corrugated Container Antitrust Litig., 643 F.2d 195, 225 (5th Cir. 1981).  It should also be noted that the U.S. Supreme Court has stated that there is no need for a formal adjudication of unconstitutionality in order for a trial court to approve a settlement to reapportion state districts.  Lawyer v. DOJ, 521 U.S. 567, 578 (1997).

The Court has taken its responsibility very seriously in order to protect the rights and interests of class members who have not participated in the settlement negotiations.  Nevertheless, upon review of the record, and with consideration of the objections raised by various class members, the Court finds that the "proposed settlement was fairly and honestly negotiated," that "serious questions of law and fact exist," that the "value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation," and that it is in the "judgment of the parties that the settlement is fair and reasonable." Gottlieb, 11 F.3d at 1014.  Consequently, the Court has approved the settlement agreement as "fair, reasonable and adequate." See id.

A. Settlement was Fairly and Honestly Negotiated

Prior to the settlement agreement, Plaintiffs had moved the Court to impose a preliminary injunction to prevent the municipal elections from proceeding under the old electoral districts. The Court notes that, at all times, Plaintiffs insisted that future elections take place with electoral districts that were substantially equal in population. Plaintiffs agreed to no longer pursue a preliminary injunction only when the City committed to establishing a redistricting plan, which has been incorporated into the settlement agreement. The establishment of electoral districts with substantial population equality resolves all of the constitutional injuries that were alleged in the First Amended Complaint. Under such circumstances, the Court has no doubt that the settlement was fairly and honestly negotiated.

B. Existence of Serious Questions of Law and Fact

In their First Amended Complaint, Plaintiffs alleged that the old electoral districts had a population deviation of up to 20.33%, in violation of the constitutional mandate of one person, one vote. Plaintiffs drew precedential support of their allegations primarily from the U.S. Supreme Court's decision in Reynolds v. Sims, 377 U.S. 533 (1964), which held that a federal court may find state legislative districts to violate the Equal Protection Clause by not having "substantial equality of population" among the districts. The Court stated that "the Equal Protection Clause guarantees the opportunity for equal participation by all voters in the election of state legislators. Diluting the weight of votes because of place of residence impairs basic constitutional rights under the Fourteenth Amendment just as much as invidious discrimination based upon factors such as race." Id. at 566.

However, the Reynolds Court also recognized that "some deviations from the equal-

population principle are constitutionally permissible . . . [s]o long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy . . . ." Id. at 579. As a means of addressing this issue, the Court stated that:

> Decennial reapportionment appears to be a rational approach to readjustment of legislative representation in order to take into account population shifts and growth. . . . Limitations on the frequency of reapportionment are justified by the need for stability and continuity in the organization of the legislative system, although undoubtedly reapportioning no more frequently than every 10 years leads to some imbalance in the population of districts toward the end of the decennial period and also the development of resistance to change on the part of some incumbent legislators. In substance, we do not regard the Equal Protection Clause as requiring, daily, monthly, annual, or biennial reapportionment, so long as a State has a reasonably conceived plan for periodic readjustment of legislative representation."

Id. at 583.

Additionally, the U.S. Supreme Court has recognized that "minor deviations from mathematical equality among state legislative districts are insufficient to make out a prima facie case of invidious discrimination under the Fourteenth Amendment so as to require justification by the State. . . . Our decisions have established, as a general matter, that an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations." Brown v. Thomson, 462 U.S. 835, 842 (1983). "A plan with larger disparities in population . . . creates a prima facie case of discrimination and therefore must be justified by the State. . . . The ultimate inquiry, therefore, is whether the legislature's plan may reasonably be said to advance [a] rational state policy and, if so, whether the population disparities among the districts that have resulted from the pursuit of this plan exceed constitutional limits." Id. at 842–43 (quotations omitted).

Since the population deviation at issue in this case exceeded the 10% maximum

established by the Brown Court, it is likely that Plaintiffs' alleged a prima facie constitutional violation. However, it is possible that such deviation was "based on legitimate considerations incident to the effectuation of a rational state policy," Reynolds, 377 U.S. at 579, and " if so, . . . the population disparities among the districts that have resulted from the pursuit of this plan [may still] exceed constitutional limits," Brown, 462 U.S. at 842–43 (quotations omitted). Moreover, the U.S. Supreme Court has explicitly recognized "whereas population alone has been the sole criterion of constitutionality in congressional redistricting under Art. I, s 2, broader latitude has been afforded the States under the Equal Protection Clause in state legislative redistricting . . . ." Mahan v. Howell, 410 U.S. 315, 322 (1973).

Even if the Court found the old districts to be unconstitutional, "under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid." Reynolds, 377 U.S. at 585.

> In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree.

Id.; but see Watson v. Commissioners Court of Harrison County, 616 F.2d 105 (5th Cir. 1980) (holding that the district court should not delay reapportionment until after census results where the parties agreed that the districts were unconstitutional and, thus, ordered the court to enjoin the elections).

As indicated by the case law in this area of jurisprudence, Plaintiffs may have sufficiently demonstrated a constitutional violation, but Defendant could have had a legitimate explanation for the population deviation that would render their claims nugatory. Furthermore, in light of the time constraints of the municipal election schedule, the Court might have been disinclined to postpone the elections regardless of whether or not the City reapportioned the electoral districts. Given such uncertainty, the Court believes that serious questions of law and fact existed at the time settlement was reached by the Parties.

      C.      <u>Value of Immediate Recovery</u>

When Plaintiffs filed their First Amended Complaint on December 19, 2001, the municipal elections were less than three months away. Consequently, from the very onset of this civil matter, the Court was mindful of the time constraints attendant to these proceedings. With such considerations in mind, it is clear to the Court that the value of an immediate recovery from this settlement agreement far outweighed the possibility of future relief had this case been litigated by the Parties. The settlement agreement has resolved in Plaintiffs' favor the substance of their constitutional claim—that Defendant's prior electoral districts were constitutionally invalid and that any future elections must proceed under a new redistricting plan. Plaintiffs could not have received a better resolution had there been protracted litigation. Moreover, the settlement agreement permitted the City to adhere to its original election schedule, thereby meeting the expectations of the voting public and maintaining the integrity of the electoral process.

      D.      <u>Judgment of the Parties that the Settlement is Fair and Reasonable</u>

As already indicated by the Court, Plaintiffs' attorneys have a significant amount of experience in class action litigation and voting rights law. The Court further notes that a "trial

court is entitled to rely upon the judgment of experienced counsel for the parties. . . . Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted). The Court has taken into consideration the fact that Plaintiffs' counsel finds the settlement to be fair and reasonable, and the Court is persuaded by their judgment.

### III.     Objections by Class Members

First of all, the Court commends the objecting class members for coming forward and voicing their objections to the class certification and/or the settlement agreement. It is of utmost importance for the Court to be knowledgeable of any objections by class members in order to make a fully informed determination that has such a binding effect on the entire class as a whole. Consequently, the Court took these objections very seriously and thoughtfully considered them when making its decision. Nevertheless, the Court does not believe the objections provided sufficient bases for denying any of the Parties' motions regarding either the class certification or approval of the settlement agreement.

Many of the objections concerned the hurried nature of the redistricting process. The Court has already noted the time constraints inherent in this civil matter due to the timing of Plaintiffs' complaint in relation to the March election schedule. However, the Court also notes the significant amount of media exposure regarding this lawsuit and the new redistricting plan. The City discussed the redistricting process in several of its council meetings, which were open to the public and covered by the press. In addition, pursuant to the Parties' Notice Plan **[Doc. No. 23]**, class members were notified about the redistricting process, the settlement agreement, and class certification by direct mail notice, media outreach (including newspaper and radio

advertisements, public access television, website postings, and news releases), and postings at locations throughout the City of Santa Fe. Even with all of this publicly available information, the objectors do not specify what exactly is inappropriate about the new electoral districts or the settlement agreement in general.

Another objection concerns the lack of consistency in the election process, specifically with regard to the modification of the districts that took place after nominating petitions were completed but before the elections themselves. Thus, some registered voters who signed petitions for candidates in one district could possibly not be able to vote for those same candidates during the elections. While this is an unfortunate consequence, the Court does not believe it is sufficiently grave to warrant disapproval of the settlement agreement. The primary concern of Plaintiffs, as well as the City, was the population equality of electoral districts prior to the municipal elections. While petitioning for signatures is a preliminary component of the election process, it is not synonymous with the actual voting itself. It is not necessarily true, and the objection has not shown, that those individuals who signed a candidate's petition would necessarily have also voted for that candidate in the election.

There was also an objection to the fact that incumbent City Council members voted for the redistricting plan rather than the voters themselves. However, under the current legislative framework, this is the procedure in which any redistricting plan would be adopted despite the class action and settlement agreement. Because this is an issue of legislative procedure that has no relation to the settlement agreement, the Court does not believe it should influence the evaluation of the settlement agreement.

Finally, an objection was raised regarding the ethnic concentrations of the redistricting

plan adopted by the City Council.  Specifically, it was argued that the Plan D redistricting plan, which would have created two Hispanic-majority districts and two white-majority districts, was never considered by the Council because it disrupted the residences of the candidates of the current election.  Instead, the Council chose Plan C-2, which created two white-majority districts, one Hispanic-majority district, and one district with no ethnic majority.

First of all, the Court notes that this objection was raised by a Council member who voted to approve Plan C-2, not Plan D.  Any disagreements he had with Plan C-2 should have been raised at the Council meetings, not in this judicial forum after the fact.  Moreover, in order to establish a claim of vote dilution, the following factors must be met:  (1) the minority group is "sufficiently large and geographically compact to constitute a majority in a single member district;" (2) the minority group is "politically cohesive;" and (3) the majority group "votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate."  Thornburg v. Gingles, 478 U.S. 30, 49–50 (1986) (citations omitted).  The objection does not demonstrate the satisfaction of factors two and three above.  Evidence was presented at the fairness hearing that, on several occasions, white-majority districts have elected Hispanic candidates.  Given the additional fact that the subordination of race-neutral districting principles by racial considerations must pass strict scrutiny in order to comply with the Equal Protection Clause, see Miller v. Johnson, 515 U.S. (1995), the Court does not believe this objection should prevent the approval of the settlement agreement.

## CONCLUSION

Pursuant to the Court's prior oral rulings on February 19, 2002, **IT IS THEREFORE ORDERED** that the Parties' Joint Motion for Class Certification **[Doc. No. 18]** and Joint Motion for Order to Approve Stipulated Settlement **[Doc. No. 30]**, and Defendant's Unopposed Motion for Order Finalizing the Redistricting Plan and for Conduction of Municipal Elections **[Doc. No. 16]** are hereby **GRANTED**. Defendant shall make any necessary amendments to its ordinances, resolutions, and documents in order to comply with the Court's order and to enforce the settlement agreement.

DATED this 13th day of March, 2002.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorneys for Plaintiffs:
Manuel J. Lopez, Esq.
Rolando L. Rios, Esq.
William L. Garrett, Esq.

Attorneys for Defendant:
Nancy Ruth Long, Esq.
John B. Pound, Esq.